**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEARNLEY SECURITIES, INC.,

               Plaintiff,

vs.

IWATANI CORPORATION OF AMERICA,
a New Jersey Corporation,

               Defendant.

Case No.

Underlying Action: *Iwatani Corporation of America v. NEL ASA, et al., No. 24-cv-00192 (JVS)(KES)*

## NON-PARTY FEARNLEY SECURITIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER

Riccardo DeBari
Filip Cukovic
THOMPSON HINE LLP300 Madison Avenue, 27th Floor
New York, New York 10017-4611
Tel. (212) 908-3975
Fax (212) 344-6101
Riccardo.Debari@ThompsonHine.com
Filip.Cukovic@ThompsonHine.com

*Attorneys for Non-Party Fearnley Securities, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 3

PROCEDURE .................................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

    A.   The Subpoenaed Testimony Is Irrelevant and Beyond the Scope of Proper Discovery..... 7

    B.   Bare Allegations of Alter Ego Status Do Not Justify Compelling Testimony. ............... 10

    C.   The Subpoena Is an Improper Attempt to Harass a Non-Party Uninvolved with the
Underlying Action and Obtain Discovery Available from Other Sources. ...................... 13

    D.   Fearnley Inc. Is Entitled to Recover Its Attorneys' Fees Under Rule 45(d)(1). ............... 15

CONCLUSION .................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackermann v. New York City Dep't of Info. Tech. & Telecom.*,
    Case No. 09-cv-2436 (JBW)(LB), 2010 U.S. Dist. LEXIS 28537 (E.D.N.Y.
    Mar. 24, 2010)................................................................................................................9

*Akande v. Graser*,
    Case No. 08-cv-188 (WWE), 2010 U.S. Dist. LEXIS 93402, (D. Conn. Sept.
    3, 2010) ........................................................................................................................7

*Allstate Ins. Co. v. All County, LLC*,
    Case No. 19-cv-7121 (WKF)(SJB), 2020 U.S. Dist. LEXIS 176297 (E.D.N.Y.
    Sept. 22, 2020)..............................................................................................................7

*Bhatt v. Patel*,
    Case No. 18-cv-2063 (ILG)(JSB), 2020 U.S. Dist. LEXIS 262800 (E.D.N.Y.
    Oct. 19, 2020)................................................................................................................7

*Buck v. Indian Mountain School, Inc.*,
    Case No. 15-cv-123 (JBA), 2016 U.S. Dist. LEXIS 94256 (D. Conn. July 20,
    2016) ............................................................................................................................7

*Burns v. Bank of America*,
    Case No. 03-cv-1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037, (S.D.N.Y.
    June 4, 2007)................................................................................................................14

*Cohen v. City of New York*,
    Case No. 05-cv-6780 (RJS)(JCF), 2010 U.S. Dist. LEXIS 44762, (S.D.N.Y.
    May 6, 2010)..................................................................................................................8

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) ....................................................................................8

*Corbett v. eHome Credit Corp.*,
    Case No. 10-cv-26, 2010 U.S. Dist. LEXIS 77712, (E.D.N.Y. Aug. 2, 2010).............9, 11, 14

*Eisemann v. Greene*,
    Case No. 97-cv-6094, 1998 U.S. Dist. LEXIS 4591, (S.D.N.Y. Apr. 8, 1998)........................9

*Fears v. Wilhelmina Model Agency, Inc.*,
    Case No. 02-cv-4911 (HB)(HBP), 2004 U.S. Dist. LEXIS 5575, (S.D.N.Y.
    Apr. 1, 2004)..................................................................................................................8

*Funnekotter v. Republic of Zimbabwe*,
    2011 U.S. Dist. LEXIS 174482 (S.D.N.Y. Sept. 14, 2011)....................................................12

*Kingsway Financial Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
    Case No. 3 -cv-5560, 2008 U.S. Dist. LEXIS 77018, (S.D.N.Y. Oct. 2, 2008)......................11

*Kirschner v. Klemons*,
    Case No. 99-cv-4828(RCC), 2005 U.S. Dist. LEXIS 9803, (S.D.N.Y. May 20,
    2005) ......................................................................................................................................9

*Molefi v. Oppenheimer Trust*,
    Case No. 03-cv-5631(FB)(VVP), 2007 US Dist LEXIS 10554, (E.D.N.Y. Feb.
    15, 2007) ...............................................................................................................................15

*National Gear & Piston, Inc. v. Cummins Power*,
    975 F. Supp. 2d 392 (S.D.N.Y. Sept. 27, 2013) ....................................................................12

*Night Hawk Ltd. v. Briarpatch Ltd.*,
    Case No. 03-cv-1382 (RWS), 2003 US Dist LEXIS 23179, at *8 (S.D.N.Y.
    Dec. 23, 2003) ......................................................................................................................10

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...............................................................................................................13

*In re Refco Sec. Litig.*,
    759 F. Supp. 2d 342 (S.D.N.Y. Feb. 14, 2011)........................................................................7

*Rosseau v. Langley*,
    7 F.R.D. 170 (S.D.N.Y. July 7, 1945)......................................................................................7

*In re Six Grand Jury Witnesses*,
    979 F.2d 939 (2d Cir. 1992)...................................................................................................13

*VFS Financing, Inc. v. Falcon Fifty LLC*,
    17 F. Supp. 3d 372 (S.D.N.Y. Apr. 30, 2014) ......................................................................13

*Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC*,
    Case No. 10-cv-35A, 2013 U.S. Dist. LEXIS 148340 (W.D.N.Y. Oct. 15,
    2013) .....................................................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 26 (c) ......................................................................................................1, 3, 7

Fed. R. Civ. P. 26(c)(1)........................................................................................................8

Fed. R. Civ. P. 26(g)(1)(B)(ii) ...........................................................................................14

Fed. R. Civ. P. 45(d) ................................................................................................3, 7, 13

Fed. R. Civ. P. 45(d)(1)...........................................................................................................3, 15

Fed. R. Civ. P. 45 (d)(3)(A) .............................................................................................................7

Fed. R. Civ. P. 45(d)(3)(A)(iv) ........................................................................................................7

## <u>INTRODUCTION</u>

Non-party Fearnley Securities, Inc. ("Fearnley Inc."), a New York-based corporation with no alleged connection whatsoever to the underlying lawsuit out of which it has been subpoenaed, respectfully moves to quash the non-party subpoena, dated April 25, 2025, and served on May 1, 2025 (the "Subpoena"), and for a protective order pursuant to Rules 26(c) and 45(d) of the Federal Rules of Civil Procedure. The Subpoena demands that Fearnley Inc. prepare and sit for a burdensome Rule 30(b)(6) deposition—not to testify about any issue relevant to the underlying litigation—but solely to explain its corporate connection to another distinct non-party, Fearnley Securities AS ("Fearnley AS"), a foreign parent headquartered in Norway.

This discovery dispute began when the plaintiff in the underlying lawsuit, Iwatani Corporation of America ("Iwatani"), personally served a subpoena, dated March 5, 2025, directed to "Fearnley Securities AS" at 880 Third Avenue in New York—a location not associated with Fearnley AS, but rather with Fearnley Inc., a separate domestic entity. After being advised that it had served the wrong entity at the wrong address, Iwatani made no effort to pursue discovery from Fearnley AS through the proper governing international mechanisms, such as through the Hague Convention, or the applicable local domestic foreign law. Instead, it abruptly pivoted—asserting, for the first time, an unpled and unsupported alter ego theory to disregard the corporate form seek to compel Fearnley AS to produce documents through its U.S.-based subsidiary by first compelling corporate testimony from Fearnley Inc. The Subpoena now seeks to force Fearnley Inc. to sit for a burdensome Rule 30(b)(6) deposition solely to satisfy Iwatani's idle curiosities about the internal corporate governance of a non-party twice removed and its apparent frustration with bedrock rules of federal civil procedure and applicable international law.  Iwatani has never alleged or provided an evidentiary basis to in any court filing, communication, or correspondence to even suggest that

the corporate forms of Fearnley Inc. and Fearnley AS should be disregarded because they are alter egos of one another, nor has it offered any factual basis to support that claim. The Subpoena is not a legitimate discovery tool—it is a transparent attempt by threat or by trick to circumvent jurisdictional limits by leveraging the U.S. affiliate to obtain foreign discovery outside the bounds of proper procedure.

This "twice-removed" deposition demand—purporting to compel preparation and testimony from one non-party solely about its alleged relationship to another non-party—has no alleged relevance to any claim or defense in the underlying case. The operative complaint, filed in *Iwatani Corp. of Am. v. NEL ASA*, et al., Case No. 8:24-cv-00192 JVS (KESx), in the Central District of California, alleges that Iwatani was fraudulently induced into entering hydrogen fueling contracts with various Nel entities. Neither Fearnley Inc. nor Fearnley AS is named as a party, nor identified or mentioned anywhere in the complaint.  No facts are pled to suggest that Fearnley Inc. played any role whatsoever in the underlying dispute or circumstances—or that any alleged alter ego affiliation between the Fearnley entities, even if proven, would be relevant to the claims at issue in that case.

Despite never alleging—nor having any articulated basis to believe—that Fearnley Inc. had any involvement in the underlying dispute, Iwatani repeatedly ignored Fearnley Inc.'s good-faith explanations of its corporate separateness from Fearnley AS. Rather than initiating discovery through internationally recognized channels—such as the Hague Convention—to obtain information directly from Fearnley AS, Iwatani served a Rule 30(b)(6) subpoena on Fearnley Inc., demanding that it sit for a deposition about matters entirely unrelated to any claim or defense in the case. Whether designed as a mere threat induced to compel document production, or a genuine effort to waste the parties' time and resources, the Subpoena's 11 topics focus exclusively on

Fearnley Inc.'s corporate relationship with Fearnley AS—not on any substantive issue in the litigation—and reflect a deliberate attempt to sidestep jurisdictional requirements by targeting a domestic affiliate with no connection to the underlying action.

But that is not how Rule 45 works. Non-party discovery must comply with the scope of Rule 26 and must not be used to harass or burden uninvolved entities—particularly where, as here, the deposition testimony currently demanded is irrelevant and the documentary information originally sought is available from more appropriate sources. Courts in this Circuit have made clear that speculative fishing expeditions are improper, and that non-parties are entitled to heightened protection from intrusive discovery. The Subpoena here is the archetype of that abuse: it targets a U.S. entity solely because it is easier to reach, and asks it to account for the operations of an alleged foreign parent based on an unpled and unsubstantiated alter ego theory. This Court should not countenance such tactics. Because the Subpoena imposes undue burden, lacks any relevance to the claims or defenses in the case, and improperly seeks to extract foreign discovery through an affiliate, it should be quashed, a protective order should be entered, and Fearnley Inc. should be awarded its reasonable attorneys' fees under Rule 45(d)(1).

## BACKGROUND

This motion arises from a subpoena served on a non-party that has no connection—factual, legal, or operational—to the claims, defenses, or parties in the underlying litigation. Fearnley Inc. is a New York-based company located at 880 Third Avenue, 16th Floor, New York, NY. See Declaration of Evan Pitchford, dated May 15, 2025 ("Pitchford Decl.") ¶ 3. Fearnley Inc. is not named in the Second Amended Complaint filed in Iwatani Corporation of America v. NEL ASA, et al., Case No. 8:24−cv−00192 JVS (KESx), currently pending in the United States District Court

for the Central District of California (the "Underlying Action"), and is not alleged to have participated in, or have knowledge of, any of the underlying conduct. *Id.* ¶¶ 16–18; Ex. 8.

The Underlying Action concerns allegations by Plaintiff Iwatani that it was fraudulently induced into executing three contracts with various NEL entities for the purchase, maintenance, and operation of hydrogen fueling station equipment. See Pitchford Decl. ¶ 17; Ex. 8. According to the pleadings, Iwatani contends it was misled about the viability and performance of the underlying technology. *Id.* The claims sound in fraud and breach of contract and are asserted against defendants including NEL ASA, Cavendish Hydrogen ASA, Nel Hydrogen Inc., and several individuals. *See id.* Notably, neither Fearnley Inc. nor Fearnley AS—the Norwegian company that Iwatani alleges is Fearnley Inc's parent (and alter ego)—appears anywhere in the complaint, let alone in any allegations of wrongdoing. *Id.* ¶¶ 16, 18.

Nevertheless, on March 5, 2025, Iwatani served a subpoena addressed to "Fearnley Securities AS" at Fearnley Inc.'s New York address. See Pitchford Decl. ¶ 2; Ex. 1. That address is associated solely with Fearnley Inc., as confirmed by business records maintained by the New York Secretary of State. *Id.* ¶ 4; Ex. 2. Upon receipt, Fearnley Inc.'s counsel, Evan Pitchford, informed Iwatani's counsel, Michael Shore, that the subpoena had been served on the wrong entity at the wrong address, and that Fearnley Inc. and Fearnley AS are distinct companies. *Id.* ¶ 5. Mr. Pitchford further explained that Fearnley AS is a foreign company headquartered in Norway and that, should Iwatani wish to obtain discovery from it, there are long-standing procedures in place—such as those under the Hague Convention—for pursuing discovery from foreign entities. *Id.* ¶ 5.

Despite acknowledging the corporate distinction, Mr. Shore refused to pursue the proper channels and instead responded with a threat to serve Fearnley Inc. with a Rule 30(b)(6) deposition subpoena. *Id.* ¶¶ 5–6. When pressed to substantiate his apparent theory that Fearnley Inc. and

Fearnley AS were alter egos, he refused to provide any basis—and, to this day, has never done so. *Id.* ¶ 5. Instead, Mr. Shore accused Fearnley Inc. of obstructing evidence and insinuated that the company was afraid of what documents held by Fearnley AS would reveal. *Id.* ¶ 7; Ex. 3.

On April 15, 2025, Mr. Shore emailed Mr. Pitchford again, attaching proposed deposition topics and asking whether he would accept service of a new subpoena. See Pitchford Decl. ¶ 8; Ex. 4. Mr. Pitchford responded that no valid subpoena had been issued to Fearnley Inc. and warned that if Iwatani persisted in its efforts to compel discovery from an uninvolved non-party, Fearnley Inc. would seek appropriate relief. *Id.* ¶ 9. Mr. Shore nevertheless confirmed his intent to serve a subpoena and expressly admitted that this approach was designed to avoid the "more onerous, slow and expensive process in Norway." *Id.* ¶¶ 10–11; Ex. 5.

On May 1, 2025, Iwatani formally served a Rule 30(b)(6) subpoena on Fearnley Inc. (the "Subpoena"). See Pitchford Decl. ¶¶ 12–13; Exs. 6–7. The Subpoena lists eleven deposition topics, all of which concern the internal relationship between Fearnley Inc. and Fearnley AS—ranging from shared personnel and insurance coverage to document access and budgetary decision-making. *Id.* ¶ 14. None of the topics bear any alleged connection to the claims or defenses in the Underlying Action. *Id.* ¶ 15. The Second Amended Complaint not only fails to identify or reference Fearnley Inc. or Fearnley AS—it includes no allegations whatsoever of corporate control, shared assets, intermingled finances, or veil-piercing between the two entities. *Id.* ¶ 16. Even if the entities were related in some way, the complaint contains no explanation of how that relationship would be relevant to the claims or defenses in the case, let alone any allegations of wrongdoing by either entity. *Id.*

The only conceivable basis for Iwatani's interest in Fearnley AS appears in Paragraphs 222–227 of the Second Amended Complaint, which briefly discuss the 2024 spin-off of Cavendish

Hydrogen ASA from Nel ASA. *See* Pitchford Decl. ¶ 19; Ex. 8. While Iwatani has suggested—without formal allegation or further explanation—that Fearnley AS may have been involved in that transaction in some way, the Second Amended Complaint does not actually state that Fearnley AS was involved, and it certainly does not allege or imply that Fearnley Inc. participated in the spin-off in any way. *See id*. ¶ 19. Nor has Iwatani ever asserted, in any written communication or court filing, that Fearnley Inc. had any role in the spin-off transaction. *Id*. ¶¶ 18–19. If Iwatani believes that the spin-off is relevant to its claims and that Fearnley AS possesses pertinent documents or information, then Fearnley AS—not Fearnley Inc.—is the proper entity from which to seek discovery.

Moreover, counsel for Iwatani was presented with numerous opportunities to articulate a basis for seeking discovery from Fearnley Inc.—including during a phone call on April 8, 2025, and in multiple written exchanges—but repeatedly failed to explain how Fearnley Inc. is connected to the underlying claims, or to provide any substantiation for the assertion that Fearnley Inc. is an alter ego of Fearnley AS. *See* Pitchford Decl. ¶¶ 5–7; Exs. 3–4. He also has not mentioned any efforts taken to obtain discovery from Fearnley AS directly in Europe. No such explanation on either topic has ever been provided.

## PROCEDURE

Under Federal Rule of Civil Procedure 45, a motion to quash a subpoena must be filed in the district where compliance is required. Here, the Subpoena was served on Fearnley Inc., a New York-based entity with an address at 880 Third Avenue, 16th Floor, New York, NY 10022. The service occurred in New York on May 1, 2025.

Rule 45(c) further provides that a subpoena may command a person to attend a deposition only:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person would not incur substantial expense.

Because Fearnley Inc. resides at its New York address, and is registered to do business in New York—as confirmed by the New York Secretary of State's website (see Pitchford Decl. ¶ 4 & Ex. 2)—compliance is required in this District. Accordingly, the motion to quash is properly brought before this Court and is accordingly marked as related to the Underlying Action.

## ARGUMENT

### A. The Subpoenaed Testimony Is Irrelevant and Beyond the Scope of Proper Discovery.

A Rule 45 non-party subpoena—like all discovery—must fall within the boundaries of discovery set forth in Rule 26(b)(1). *See Bhatt v. Patel*, Case No. 18-cv-2063(ILG)(JSB), 2020 U.S. Dist. LEXIS 262800, at *3 (E.D.N.Y. Oct. 19, 2020). Discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. Feb. 14, 2011) (subpoenas issued under Rule 45 are constrained by Rule 26(b)(1)'s relevance requirement). Rule 45(d)(3)(A) further requires courts to quash[1] or modify subpoenas that impose undue burden or seek irrelevant material, particularly when directed at non-parties. Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also Akande v. Graser*, Case No. 8-cv-188 (WWE), 2010 U.S. Dist. LEXIS

---

[1] Courts have recognized that Rule 26 and Rule 45 must be construed *in pari materia*, and that a motion to quash a subpoena under Rule 45 may also be brought, or understood, as a motion for a protective order under Rule 26. See *Rosseau v. Langley*, 7 F.R.D. 170, 172 (S.D.N.Y. 1945) ("Rule 45 and Rule 26 must be construed in pari materia."); *Allstate Ins. Co. v. All County, LLC*, Case No. 19-cv-7121 (WKF)(SJB), 2020 U.S. Dist. LEXIS 176297, at *3 (E.D.N.Y. Sept. 22, 2020) (explaining that the motion to quash was "best understood as a motion for protective order," and noting that courts often use the language of quashing a subpoena when addressing issues of relevance and proportionality); *Buck v. Indian Mountain School, Inc.*, Case No. 15-cv-123 (JBA), 2016 U.S. Dist. LEXIS 94256, at *3 (D. Conn. July 20, 2016) (granting non-party's motion to quash and for protective order in large part). Accordingly, a party responding to a subpoena may seek relief under both rules.

93402, 2010 WL 3613912, at *1 (D. Conn. Sept. 3, 2010). A court may also issue a protective order to limit or forbid discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Courts are especially protective of non-parties. As courts in this Circuit have emphasized, "[s]pecial weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." *Cohen v. City of New York*, Case No. 5-cv-6780 (RJS) (JCF), 2010 U.S. Dist. LEXIS 44762, at *16 (S.D.N.Y. May 6, 2010); *see also Fears v. Wilhelmina Model Agency, Inc.*, Case No. 2-cv-4911 (HB)(HBP), 2004 U.S. Dist. LEXIS 5575, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] non-party"); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

The Subpoena served by Plaintiff Iwatani on non-party Fearnley Inc. is improper under these settled standards. It seeks testimony from Fearnley Inc. about 11 topics exclusively concerning its internal structure and its corporate relationship with Fearnley AS, an alleged foreign parent that is headquartered and registered in Norway. *See* Pitchford Decl. ¶¶ 13–14; Ex. 6. These topics include shared personnel, ownership, budgetary input, insurance coverage, document access, and email servers—all issues that have no connection to the allegations or defenses in the Underlying Action.

Instead, the Underlying Action—*Iwatani Corp. of Am. v. NEL ASA, et al.*, Case No. 8:24-cv-00192 JVS (KESx)—involves allegations that Iwatani was fraudulently induced to enter into contracts with various Nel entities for the purchase, servicing, and maintenance of hydrogen fueling station equipment. *See* Pitchford Decl. ¶ 17; Ex. 8. Neither Fearnley Inc. nor Fearnley AS is named, identified, or even referenced in the operative pleadings. See id. ¶ 16. While Paragraphs

222–227 of the Second Amended Complaint refer to a 2024 spin-off of Cavendish Hydrogen ASA from Nel ASA, and while Iwatani's counsel has speculated that Fearnley AS may have been involved in that transaction, Iwatani has never alleged—whether in court filings, written correspondence, or meet-and-confer communications—that ***Fearnley Inc.*** had any involvement in the spin-off or any other underlying conduct. *See id.* ¶ 19. Instead, Iwatani's only apparent basis for subpoenaing Fearnley Inc. is an unsubstantiated alter ego theory—raised for the first time only after being informed of the corporate separateness between the two entities. *See id.* ¶¶ 5, 19–20.

This absence of relevance connecting Fearnley Inc. in any way to the Underlying Action warrants issuing a protective order and quashing the Subpoena. The Subpoena seeks discovery not about any party or factual issue in the case, but solely about one non-party's alleged relationship to another non-party—neither of which is mentioned, even once, in the operative pleadings. There is no link between the requested testimony and the actual claims or defenses at issue, rendering the entire inquiry improper. See *Kirschner v. Klemons*, Case No. 99-cv-4828(RCC),  2005 U.S. Dist. LEXIS 9803, at *2 (S.D.N.Y. May 20, 2005) (a subpoena seeking material with "little apparent or likely relevance" should be quashed even if compliance would not be onerous); *Eisemann v. Greene*, Case No. 97-cv-6094, 1998 U.S. Dist. LEXIS 4591, 1998 WL 164821, at *2 (S.D.N.Y. Apr. 8, 1998) (quashing subpoena where the requested deposition would constitute an "unreasonable or burdensome misuse of the discovery process" due to doubtful relevance); *Ackermann v. New York City Dep't of Info. Tech. & Telecom.*, Case No. 09-cv-2436 (JBW)(LB), 2010 U.S. Dist. LEXIS 28537, at *4 (E.D.N.Y. Mar. 24, 2010) (granting motion to quash subpoena where non-party "has no personal knowledge" of claims at issue).

Moreover, it is well established that discovery grounded in speculation or designed as a fishing expedition—particularly when directed at non-parties—is improper. See *Corbett v. eHome*

9

*Credit Corp.*, Case No. 10-CV-26, 2010 U.S. Dist. LEXIS 77712, at *2 (E.D.N.Y. Aug. 2, 2010); *Night Hawk Ltd. v. Briarpatch Ltd.*, Case No. 03-cv-1382 (RWS), 2003 US Dist LEXIS 23179, at *8 (S.D.N.Y. Dec. 23, 2003). The Subpoena here exemplifies that impropriety. It seeks to compel Fearnley Inc. to testify not about any issue relevant to the underlying claims, but in hopes of establishing some connection between two non-party entities—Fearnley Inc. and Fearnley AS— so that Iwatani might bypass proper procedures for obtaining discovery from a foreign affiliate *non-party*. See Pitchford Decl. ¶¶ 13–14; Ex. 6. But that speculative inquiry on a subpoena target twice removed has no bearing on the claims or defenses in the case, and courts routinely reject subpoenas that attempt to manufacture relevance through discovery itself. This Court should do the same.

In the event that Fearnley Inc. is not protected from the improper Subpoena, the burden imposed on Fearnley Inc. will be significant. Although it has no involvement in the underlying dispute, the Subpoena would require the company to identify, prepare, and present a corporate designee to testify on 11 topics—many of which concern the internal operations of a separate foreign entity. This preparation would necessitate time-consuming internal review, consultation with counsel, and potentially outreach to third parties. *See* Pitchford Decl. ¶ 21. For a non-party with no alleged connection to the claims or defenses in the case, this burden is undue and unjustifiable.

**B. Bare Allegations of Alter Ego Status Do Not Justify Compelling Testimony.**

To the extent Iwatani seeks to justify the Subpoena on the theory that Fearnley Inc. is the alter ego of Fearnley AS, that argument fails both legally and factually. As explained above, neither Fearnley Inc. nor Fearnley AS is mentioned in the operative complaint, no alter ego theory has been pled or asserted, and—critically—courts in this Circuit routinely reject efforts to impose

discovery burdens on non-parties based solely on speculative or conclusory allegations of corporate alter-ego affiliation.

In *Costamar Shipping Co. v. Kim-Sail, Ltd.*, the court denied a motion to compel discovery from a non-party alleged to be affiliated with a judgment debtor, emphasizing that "[t]he mere allegation of an alter ego relationship is insufficient; it must be supported by facts showing the basis for the assertion." 1995 U.S. Dist. LEXIS 18430, at *9 (S.D.N.Y. Dec. 12, 1995). Even where two entities may share some operational overlap, the court made clear that "New York courts disregard the corporate form reluctantly," and only when there is a showing that the alleged alter ego "primarily transacted the dominator's business rather than its own." *Id.* at *10–11.

Here, Iwatani has not even attempted to make such allegations—let alone offered any factual showing that would support piercing the corporate veil between Fearnley Inc. and Fearnley AS. Nowhere in its pleadings does Iwatani assert an alter ego theory or claim that Fearnley Inc. acted as an agent or extension of Fearnley AS. See Pitchford Decl. ¶ 16. Nor does the Second Amended Complaint include any factual assertions concerning shared control, intermingled finances, or any other hallmark of alter ego status. The presumption of corporate separateness therefore remains fully intact. Moreover, when presented with the opportunity to explain the basis for the alleged alter ego theory—both during the April 8, 2025 phone call and in multiple written communications—Mr. Shore refused to provide any justification, and to this day has never articulated a factual or legal basis for the assertion. *See id.* ¶ 5; Exs. 3–5. Fearnley Inc. cannot therefore be compelled to engage in discovery merely to explore an unalleged and unsupported theory. See *Corbett v. eHome Credit Corp.*, Case No. 10-CV-26, 2010 U.S. Dist. LEXIS 77712, at *2 (E.D.N.Y. Aug. 2, 2010) (the burden is upon the party issuing the subpoena to demonstrate that the information sought is relevant and material to the allegations and claims at issue in the

proceedings); see also *Kingsway Financial Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. Case No. 3 -cv-5560, 2008 U.S. Dist. LEXIS 77018, at *4 (S.D.N.Y. Oct. 2, 2008) (same).

A similar principle to the one articulated in *Costamar Shipping Co. v. Kim-Sail, Ltd.* governed the court's reasoning in *Funnekotter v. Republic of Zimbabwe*, 2011 U.S. Dist. LEXIS 174482 (S.D.N.Y. Sept. 14, 2011), where petitioners sought discovery from several Zimbabwean corporations they claimed were alter egos of the Zimbabwean government—the actual judgment debtor in that case. The court denied the petitioners' motion for sanctions, finding no basis to hold the respondent corporations responsible for discovery obligations because the petitioners had failed to make a threshold showing of alter ego status. The court emphasized that "merely alleging [alter ego status] is not sufficient" and that "[p]arties enjoy a presumption of separate status," which must be affirmatively overcome before any obligation to provide discovery can arise. *Id.* at *5.

Fearnley Inc.'s petition seeking protective order presents an even more compelling reason to reject Iwatani's effort. Unlike *Funnekotter*, where one of the alleged alter egos was at least a party to the underlying action, here, both Fearnley Inc. and Fearnley AS are non-parties. Yet Iwatani seeks to compel one non-party to testify about its alleged relationship to another non-party, based solely on an unpled and unsupported theory of alter ego liability. If the court in *Funnekotter* declined to impose discovery obligations where at least one of the alleged alter egos was actually a party to the proceeding, it follows all the more that compelling discovery here—where both entities are non-parties, and there is no pleading, allegation, or factual basis to support an alter ego theory—would be even more improper. *See also National Gear & Piston, Inc. v. Cummins Power*, 975 F. Supp. 2d 392, 404 (S.D.N.Y. Sept. 27, 2013) (finding allegations that "do no more than restate the common characteristics of a parent-subsidiary relationship" to be insufficient for veil-

piercing); *VFS Financing, Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372 (S.D.N.Y. Apr. 30, 2014)

("The separate corporate existences of parent and subsidiary will not be set aside merely on a

showing of common management of the two entities, nor on a showing that the parent owned all

the stock of the subsidiary."

### C. The Subpoena Is an Improper Attempt to Harass a Non-Party Uninvolved with the Underlying Action and Obtain Discovery Available from Other Sources.

Fearnley Inc. repeatedly informed Iwatani's counsel—both orally and in writing—that it is

a distinct corporate entity from Fearnley AS, and that if Iwatani sought discovery from Fearnley

AS, it needed to proceed through appropriate international procedures. See Pitchford Decl. ¶¶ 4–

6 & Exs. 2–3. Counsel for Iwatani was told as early as April 8, 2025, that Fearnley AS was the

entity named in the March 5 subpoena, and that the subpoena had been improperly served at a New

York address solely associated with Fearnley Inc. *See id.* ¶¶ 3, 5. Iwatani nevertheless declined to

pursue discovery through the Hague Convention or other appropriate channels and instead sought

to extract discovery from Fearnley Inc.—a separate domestic affiliate—by advancing an

unsubstantiated theory of alter ego liability. *See id.* ¶¶ 5–10, 12; Exs. 2–5. Yet despite being

presented with numerous opportunities to explain how Fearnley Inc. was allegedly related to the

claims in the Underlying Action or to substantiate its alter ego theory, Iwatani has never done so.

*See id.* ¶ 5 (April 8 call); Exs. 2–4. This conduct reflects not a legitimate discovery effort, but an

improper tactic designed to pressure a non-party and circumvent formal procedures for obtaining

discovery from a foreign entity. That is not a permissible use of Rule 45.

Courts have long recognized that "[d]iscovery should be denied when a party's aim is to

delay … or embarrass or harass the person from whom he seeks discovery." *Oppenheimer Fund,

Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978); *see also In re Six Grand Jury Witnesses*, 979 F.2d

939, 943 (2d Cir. 1992) (discovery may not be used "to harass or oppress the party subject to it").

The Federal Rules similarly prohibit discovery "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). That is precisely what is occurring here. The Subpoena seeks to compel Fearnley Inc. to sit for a burdensome Rule 30(b)(6) deposition not to elicit relevant testimony, but simply to justify its separateness from a distinct non-party. *See* Pitchford Decl. ¶¶ 13–14 & Ex. 6.

Worse still, Iwatani's approach ignores the obvious alternative sources for the limited information it may be seeking. If Iwatani truly believes that Fearnley AS played a role in the 2024 spin-off of Cavendish Hydrogen ASA, the proper course would be to pursue discovery from Fearnley AS directly through appropriate channels. It has not done so. Alternatively, if Cavendish or its related entities were involved in the spinoff—as the Second Amended Complaint appears to allege—those defendants are already parties to the action and are in a position to produce any related documents or information. Courts have repeatedly rejected attempts to impose discovery burdens on non-parties when the same information is available from a party. See *Corbett v. eHome Credit Corp.*, Case No. 10-cv-26, 2010 U.S. Dist. LEXIS 77712, at *4 (E.D.N.Y. Aug. 2, 2010) ("Since the information sought by subpoena is … easily obtainable from another source, and, at best, tangential to the claims at issue in this case, the burden imposed by the third-party subpoenas outweighs any likely benefit…"); *Burns v. Bank of America*, Case No. 3-cv-1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037, , at *45 (S.D.N.Y. June 4, 2007) ("If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness pursuant to Rule 45").

The Subpoena reflects an improper end-run around the limits of discovery, jurisdiction, and international service of process. It is not a good-faith request for information relevant to the

litigation—it is a pressure tactic aimed at an uninvolved entity that Iwatani knows has no discoverable material. The Court should not permit it.

### D. **Fearnley Inc. Is Entitled to Recover Its Attorneys' Fees Under Rule 45(d)(1).**

Pursuant to Rule 45(d)(1) of the Federal Rules of Civil Procedure, Fearnley Inc. respectfully requests an award of reasonable attorneys' fees incurred in responding to the Subpoena. Iwatani was expressly advised—both orally and in writing—of Fearnley Inc.'s corporate separateness from Fearnley AS and its lack of possession, custody, or control over any relevant documents or information. See Pitchford Decl. ¶¶ 3–11 & Exs. 2–4. Nevertheless, Iwatani proceeded to serve the Subpoena, forcing Fearnley Inc. to expend time and resources preparing this motion to protect itself from improper discovery obligations. Where, as here, a party fails to take reasonable steps to avoid imposing undue burden on a non-party, sanctions are mandatory under Rule 45(d)(1). See *Molefi v. Oppenheimer Trust*, Case No. 03-cv-5631(FB)(VVP), 2007 US Dist LEXIS 10554, at *3 (E.D.N.Y. Feb. 15, 2007); *Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC*, Case No. 10-cv-35A, 2013 U.S. Dist. LEXIS 148340, at *9–10 (W.D.N.Y. Oct. 15, 2013) (awarding costs and fees for responding to unduly burdensome non-party subpoena). An award of fees is therefore appropriate here.

## CONCLUSION

For the foregoing reasons, Fearnley Inc., respectfully requests that the Court enter a protective order and quash Iwatani's 30(b)(6) Subpoena and award Fearnley Inc.'s reasonable attorneys' fees and costs incurred in connection with responding to the improper Subpoena.

Dated:        May 15, 2025
               New York, New York

THOMPSON HINE LLP

By:   *s/ Riccardo DeBari*
       Riccardo DeBari
       Filip Cukovic
       300 Madison Avenue, 27th Floor
       New York, New York 10017-4611
       Tel. (212) 908-3975
       Fax (212) 344-6101
       Riccardo.Debari@ThompsonHine.com
       Filip.Cukovic@ThompsonHine.com

*Attorneys for Non-Party Fearnley Securities, Inc.*

16

## LOCAL RULE 7.1(F) CERTIFICATION

I hereby certify that pursuant to Local Rule 7.1(c) the foregoing brief is 4,900 words in length and therefore does not exceed 8,750 words.


*s/ Riccardo DeBari*
Riccardo DeBari
Attorney for Non-Party Fearnley Securities, Inc.