UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEARNLEY SECURITIES, INC.,

                    Plaintiff,

       -against-

IWATANI CORPORATION OF AMERICA, a
New Jersey Corporation,

                    Defendant.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED:  __1/26/2026__

25 Misc. 223 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

In connection with a case pending in the United States District Court for the Central District of California (the "California action"), Iwatani Corporation of America ("Iwatani") served a subpoena for deposition testimony on Fearnley Securities, Inc. ("Fearnley Inc."), a nonparty to the California action. *See* Pitchford Decl. I ¶ 13, ECF No. 2; Subpoena II, ECF No. 2-6; Compl., ECF No. 2-8 (Second Amended Complaint, "SAC"). Fearnley Inc. moves to quash the subpoena pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3). *See* Mot., ECF No. 1; Mem., ECF No. 3; Opp., ECF No. 8; Reply, ECF No. 12. For the reasons stated below, the motion is GRANTED.

## BACKGROUND

Fearnley Securities, AS ("FAS") is a Norwegian investment bank. Opp. at 1. FAS is a "parent company with domestic affiliates operating in different jurisdictions." Reply at 4. One of those affiliates is Plaintiff Fearnley Inc., a New York domestic corporation. *Id.*; *see also* Caruso Decl. ¶ 3, ECF No. 14. Iwatani states that FAS advised and co-managed a spinoff of Nel, a hydrogen fueling equipment business, which transferred its assets to Cavendish, a new entity. *See* Opp. at 1; SAC ¶¶ 222–27. Iwatani alleges that Nel undertook that spinoff to avoid liability for

defrauding Iwatani by selling it defective hydrogen fueling equipment. *See id.* In October 2024, the district court in the California action dismissed Iwatani's fraudulent transfer claim related to Nel's transfer of assets to Cavendish. *See* Pitchford Decl. II ¶ 4, ECF No. 13; ECF No. 13-1. Iwatani nonetheless proceeded to seek documents and communications from FAS related to FAS's "handling of the Cavendish spinoff," such as "representations and investigations done by the investment bankers underwriting the spinoff" bearing on "what Nel was aware of relating to the defective equipment, when they knew it, and whether the Cavendish spinoff was an effort to fraudulently rid Nel of massive liabilities." Opp. at 1.

At first, Iwatani attempted to obtain documents related to the Cavendish spinoff by serving Fearnley Inc., an FAS affiliate, with a subpoena directed to parent company FAS. Opp. at 1; Pitchford Decl. I ¶ 2; *see* Subpoena I, ECF No. 2-1. On May 1, 2025, after Fearnley Inc. indicated that it would not accept service on behalf of its parent company and that it was not required to comply with a subpoena that was not directed at it, Iwatani served a second subpoena on Fearnley Inc., this time seeking deposition testimony from Fearnley Inc. to determine "whether FAS has sufficient control over [Fearnley Inc.] or if the businesses are so intertwined that [Fearnley Inc.] could obtain the [ultimate] documents Iwatani seeks." Opp. at 4; *see* Subpoena II; Pitchford Decl. I ¶¶ 9, 13. The May 1 subpoena served on and directed to Fearnley Inc. outlined the following 11 topics for a deposition, *see* Subpoena II at 4:

(1) The relationship between Fearnley Securities, Inc. and Fearnley Securities AS;

(2) The common ownership as between Fearnley Securities, Inc. and Fearnley Securities AS;

(3) The shared email servers as between Fearnley Securities, Inc. and Fearnley Securities AS;

(4) The shared officers and directors as between Fearnley Securities, Inc. and Fearnley Securities AS;

(5)    The ability of persons employed by as between Fearnley Securities Inc. to access documents and materials created and maintained by Fearnley Securities AS;

(6)    How compensation is set for employees of as between Fearnley Securities, Inc., particularly the input of Fearnley Securities AS personnel in that process

(7)    The guarantee of any obligations of as between Fearnley Securities, Inc. by Fearnley Securities AS, including leases and employment contracts;

(8)    The setting of budgets and performance goals for Fearnley Securities, Inc. where Fearnley Securities AS has input or decision-making authority;

(9)    Any contracts or agreements where Fearnley Securities, Inc. is a party, and its obligations or liabilities are guaranteed or shared by Fearnley Securities AS;

(10)    Any insurance policies that cover as insureds both Fearnley Securities, Inc. and Fearnley Securities AS; and

(11)    The communications between Fearnley Securities, Inc. and any Defendant or Defendants' counsel regarding responses to the subpoena served upon Fearnley Securities, Inc.

Fearnley Inc. moves to quash the subpoena.  *See* Mot.; Opp.  In support of its motion, Fearnley Inc.'s general counsel states, *inter alia*, that Fearnley Inc. and FAS are "independent and internationally separated entities, with separate financial, operational and regulatory status"; that FAS "does not occupy or operate out of Fearnley Inc.'s New York office"; that Fearnley Inc. "does not routinely maintain, store, or control [FAS'] internal documents, communications, or records concerning its ongoing business operations independent of Fearnley Inc."; and that "Fearnley Inc. has not been involved in any transactions involving Nel [] or Cavendish [] and does not have any business records related to these entities."  Caruso Decl. ¶¶ 3–6.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 provides that on a "timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Rule 26 provides that the court "may, for good

cause, issue an order [forbidding the disclosure of discovery] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

On a motion to quash, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Shaw v. Arena*, No. 17 Misc. 448, 2018 WL 324896, at *1 (S.D.N.Y. Jan. 3, 2018) (cleaned up); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (S.D.N.Y. 2010) ("A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." (cleaned up)). "Relevance" is construed "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Rule 26(b)(1) also requires that the information sought via discovery be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *Morocho v. Stars Jewelry by A Jeweler Corp.*, 345 F.R.D. 292, 294 (S.D.N.Y. 2024).

If relevance and proportionality are established, "the movant bears the burden of demonstrating an undue burden." *Griffith v. United States*, No. M8-85, 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007). Determining whether a subpoena imposes an undue burden "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it," which "calls upon the trial court to consider whether the information is necessary and whether it is available from any other source." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009); *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005). Courts have "broad discretion to determine whether a subpoena imposes an undue burden, but in the case of subpoenas targeted at nonparties, should be particularly sensitive to weighing the probative value of the information sought against the burden of production to the nonparty." *In re Novartis & Par*

4

*Antitrust Litig.*, No. 18 Civ. 4361, 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020) (internal citation and quotation omitted).

## DISCUSSION

The Court finds that even if the deposition testimony could be relevant, Iwatani "has failed to persuade the Court that the documents bear any more than a 'doubtful or tangential' relationship" to the remaining claims in the underlying action, and "so, on balance, the third-party subpoenas are unduly burdensome." *Corbett v. eHome Credit Corp.*, No. 10 Civ. 26, 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010) (citation omitted).

Iwatani has not persuaded the Court that Fearnley Inc. has any material information relevant to its lawsuit against Nel. At most, Iwatani has established that Fearnley Inc.'s *parent company* in Norway provided investment banking services to Nel, which may have related to the transaction(s) at issue in the California action. *See* Opp. at 1, 8. However, Fearnley Inc. is "independent and internationally separate[]" from its parent company; "does not routinely maintain, store, or control [FAS'] internal documents, communications, or records concerning [FAS'] business operations"; "has not been involved in any transactions involving Nel[] or Cavendish[]"; and "does not have any business records related to these entities." Caruso ¶¶ 3–6. Therefore, a deposition of Fearnley Inc. is not likely to produce any material information relevant to Iwatani's claims.

Indeed, the subpoena's 11 topics focus exclusively on Fearnley Inc.'s corporate relationship to FAS. Subpoena II at 4. It is difficult to see how information regarding common ownership, shared email servers, compensation determinations, leases, budgets, and insurance policies between Fearnly Inc. and FAS, another nonparty, is relevant to Nel's alleged conduct in selling Iwatani its hydrogen fueling equipment. *See* Subpoena II at 4; Mem. at 8. And even if

some relevant information could emerge from the deposition, "[d]efendants [] have not offered anything beyond speculation." *Gonzalez v. Allied Concrete Indus., Inc.*, No. 14 Civ. 4771, 2016 WL 4444789, at *3 (E.D.N.Y. Aug. 23, 2016). "Consequently, there is no justification for a wholesale fishing expedition in the hopes that [a connection between Fearnly Inc. and FAS] might prove to unearth some nugget of relevant information." *Id.* This is even more so the case because FAS's connection to the underlying action relates most clearly to a claim that has already been dismissed from the California action. *See* Reply 7; ECF No. 13-1. "'A subpoena that pursues material with little apparent or likely relevance to the subject matter, . . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous,' particularly where, as here, the person or entity on whom the demand is made is not a party to the action." *Corbett*, 2010 WL 3023870, at *3 (quoting *Kirschner*, 2005 WL 1214330, at *2).[1] And, in any case, Iwatani has not alleged that it cannot obtain documents related to the Cavendish spin-off through FAS directly. *See Aristocrat Leisure*, 262 F.R.D. at 300 (requiring courts to consider whether the information sought is "available from another source"). Therefore, the Court quashes the subpoena.

---

[1] A deposition would impose at least some burden on Fearnly Inc. The subpoena "would require the company to identify, prepare, and present a corporate designee to testify on 11 topics—many of which concern the internal operations of a separate foreign entity. This preparation would necessitate time-consuming internal review, consultation with counsel, and potentially outreach to third parties." Mem. at 10; Pitchford Decl. I ¶ 20.

**CONCLUSION**

For the foregoing reasons, Fearnley Inc.'s motion to quash is GRANTED.[2]   The Clerk of

Court is respectfully directed to terminate the motion at ECF No. 1 and close the case.

SO ORDERED.

Dated: January 26, 2026
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[2] Fearnley Inc.'s request for attorney's fees, *see, e.g.*, Mem. at 15, is DENIED without prejudice to renewal within 14 days of the date of this order.  A claim for attorney's fees requires an attorney's declaration supported by contemporaneous time records.  *See New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).